**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re<br><br>Matthew Robert Martone,<br>Giuliana Marie Martone,<br><br>Debtors. | Case No. 18-04106-eg<br><br>Chapter 13<br><br>**AMENDED ORDER DENYING MOTION<br>FOR HARDSHIP DISCHARGE**[1] |

THIS MATTER is before the Court on the Motion for Hardship Discharge (Dkt. No. 53; the "Motion") pursuant to 11 U.S.C. § 1328(b)[2] filed by Matthew Robert Martone and Giuliana Marie Martone ("Debtors"). Pamela Simmons-Beasley, the chapter 13 trustee appointed in this case (the "Trustee"), filed an Objection (Dkt. No. 56) requesting that the Motion be denied. The Court conducted a hearing on the Motion on June 5, 2023 (the "Hearing"), which was attended by the Trustee, Debtors, and their counsel. For the reasons stated below, Debtors have not met their burden of proof to establish all elements required for a hardship discharge; accordingly, the Motion is denied.

**FINDINGS OF FACT**

At the time their case was filed on August 13, 2018, Matthew and Giuliana Martone were above-median-income chapter 13 debtors. Mr. Martone was employed as a manager at Harbor Freight, earning $7,013.72 in monthly gross wages, while Mrs. Martone was not employed and had recently stopped working. (Dkt. No. 1). Mrs. Martone obtained employment post-petition and Debtors filed amended Schedules I/J on November 14, 2018, reflecting monthly net income of

---

[1] This order is being amended to correct a misstatement of fact in the Conclusions of Law section regarding the number of years Mr. Martone was employed by Harbor Freight. It has been changed to reflect that Mr. Martone was employed by Harbor Freight for 5 years, not 22 years as stated in the prior Order. The amended order further clarifies that Mr. Martone had 22 years of experience in the retail management field.

[2] Further references to the bankruptcy code, 11 U.S.C § 101 *et seq.*, will be by section number only.

1

$828.62. (Dkt. No. 32). Debtors' chapter 13 plan was confirmed on January 9, 2019. (Dkt. No. 43). The plan required Debtors to make payments of $650.00 per month for a period of 60 months. (Dkt. No. 8). To date, all secured and priority debt has been paid in full and general unsecured creditors have received distributions totaling approximately 8 percent of their claims.

Eight months of payments amounting to less than $5,000 remain under the Plan. Debtors are past due on their plan payments and have made no payments since October 2022. The Motion indicates that due to changes in the workplace resulting from the Covid-19 pandemic, Mr. Martone began having to perform more physical tasks at work, which caused him to have health issues. Because his employer did not provide accommodations, he left his job and decided to enroll in school with the goal of becoming a high school teacher. As a result, Debtors' income has decreased substantially, as shown in the amended Schedules I/J filed on April 7, 2023, indicating that Mr. Martone earns negative $205.39 a month as a delivery driver and that Mrs. Martone earns monthly gross income of $1,389.26 as a cosmetologist at Great Clips. (Dkt. No. 50). Amended Schedule J reflects monthly net income of negative $2,656.18. (*Id.*). The Motion indicates that Debtors are relying on food stamps and Medicaid, yet no benefits are listed on the amended Schedules I/J.

At the hearing, Mr. Martone testified regarding his decision to leave his job and his current employment situation. When the case was first filed, Mr. Martone worked as a store manager at Harbor Freight, where he oversaw all operations at a single location. He voluntarily left his position at Harbor Freight in August 2022, after five years of employment with the company, because of health issues that arose during his employment. He testified that before the onset of the Covid-19 pandemic, his job was administrative in nature, but with the subsequent labor shortage, it became necessary for him to take on responsibilities across every position in the store, including unloading trucks, stocking shelves, ringing up customers, loading customer vehicles, and other occupational

tasks. He further testified that he injured his back in four separate incidents with the increased physical nature of his job duties and that to complete essential work, he was required to lift between 50-100 pounds and work 60-80 hours a week, causing significant stress. Mr. Martone testified that approximately a year ago, during a routine physical, he underwent an electrocardiogram showing evidence of a previous heart attack which he believes to be related to the period of strenuous employment. Mr. Martone stated that when he was advised by a physician to reduce stress for his health, he sought employment of a more administrative nature but was consistently limited by the lack of a college degree.

Currently, Mr. Martone is completing his degree at Susquehanna University and is on course to graduate in May 2024 with a Bachelor of Science degree in Physics, which will allow him to pursue his desired employment as a high school teacher. When he decided to return to school to complete his degree, Mr. Martone borrowed $25,000.00 in student loans to pay for his education and anticipates his future compensation as a teacher will be approximately $58,000 based on salaries in the area when he currently lives. As his class schedule permits, Mr. Martone currently works as a driver for ride-share apps, a delivery driver for Doordash, and as a timer for a company that measures the results of road-race participants. At times, and as his schedule allows, he also works as a substitute teacher, where he is compensated approximately $120.00 per day. Mr. Martone testified that he is taking twenty-four credits this semester and, when not in class, he works approximately fifteen hours a week at the jobs previously mentioned.

Despite possessing approximately 22 years of experience in retail management, Mr. Martone testified at the Hearing that he has not pursued employment opportunities in the field because of the purported stressors that would accompany any such position and their potential effect on his heart condition. When questioned by the Trustee about his current ability to obtain

3

employment, Mr. Martone conceded he "could easily find another job in retail" but posited that doing so would be "turning one problem into another." At the Hearing, Mr. Martone clarified that his health has recovered with respect to his back injuries.

Based on these facts, Debtors contend that although they have not completed their chapter 13 plan payments, they are entitled to hardship discharge pursuant to § 1328(b), as the failure to complete the plan payments is due to circumstances representing just cause why they should not be held accountable.

## CONCLUSIONS OF LAW

Section 1328(b) allows a court to grant a discharge to a debtor who has not completed his or her plan payments only if the following three elements are satisfied: (1) the failure to complete payments is due to circumstances for which the debtor should not justly be held accountable; (2) the amount distributed to unsecured creditors is an amount not less than the amount they would have received if the debtor had liquidated under chapter 7; and (3) modification of the plan is not practicable.[3] A debtor bears the burden of proof for all three elements under § 1328(b). *In re Harrison*, No. 96-36511-T, 1999 WL 33114273, at *1 (Bankr. E.D. Va. Aug. 3, 1999) (citing *Bandilli v. Boyajian* (*In re Bandilli*), 231 B.R. 836, 839 (B.A.P. 1st Cir. 1999)). Here, the parties agree that Debtors pass the chapter 7 liquidation test of § 1328(b)(2) and that modification of the plan is not practicable. The only element in dispute is the first—whether Debtors' inability to complete their plan payments is due to circumstances for which they should not be held accountable. For the reasons set forth in detail below, the Court finds that Debtors have not met their burden of proof of the factor at issue in this case.

---

[3] Debtors must also complete personal financial management courses prior to discharge. § 1328(g)(1). Debtors' financial management course certificates were filed on September 11, 2018. (Dkt. Nos. 17 and 18).

4

Courts are split on the level of severity of factual circumstances that properly give rise to a hardship discharge. *See In re Noblin-Williams*, No. 20-00208, 2020 WL 8551779, at *7 (Bankr. S.D. Miss. Nov. 23, 2020); *In re Wilson*, No. 2:10-bk-20883, 2016 WL 699553, *5 (Bankr. S.D. W.Va. Feb. 22, 2016) (citing cases reaching opposite conclusions as to whether catastrophic circumstances are required for a debtor to meet his or her burden of proof for a hardship discharge). In *In re Nelson*, the bankruptcy court found that economic hardships such as loss of business revenue and increased expenses were "not the type of catastrophic events such as death or disability which prevents a debtor, through no fault of his or her own, from completing payments." 135 B.R. 304, 306 (Bankr. N.D. Ill. 1991); *see also In re Cummins*, 266 B.R. 852, 855 (Bankr. N.D. Iowa 2001) (defining a catastrophic event as being outside the control of those whom it harms and concluding that while the debtors' circumstances posed a financial hardship, they were not "catastrophic" and did not support a hardship discharge). In contrast, the Bankruptcy Appellate Panel for the First Circuit Court of Appeals refused to read the word "catastrophic" into the statute, finding instead that under the plain language of the statute, there is no requirement that a debtor prove the occurrence of a catastrophic event. *Bandilli*, 231 B.R. at 840; *see also In re Harris*, No. 03-12477, 2008 Bankr. LEXIS 718, at *1 (Bankr. D.S.C. Mar. 21, 2008) (noting that "[w]hile the language of § 1328(b)(1) does not require a 'catastrophic' event, it does require the Court to exercise 'special vigilance' in its analysis.").

Under § 1328(b)(1), the Court must find that the failure to complete plan payments "is due to circumstances for which the debtor should not be justly held accountable." This determination is a fact-driven analysis, "with an emphasis properly focused on the nature and quality of the intervening event or events upon which the debtor relies." *Wilson,* 2016 WL 699553, at *2

(quoting *Bandilli,* 231 B.R. at 840). To determine whether a debtor is justly accountable, the *Bandilli* court listed the following considerations:

> a) whether the debtor has presented substantial evidence that he or she had the ability and intention to perform under the plan at the time of confirmation;
> b) whether the debtor did materially perform under the plan from the date of confirmation until the date of the intervening event or events;
> c) whether the intervening event or events were reasonably foreseeable at the time of confirmation of the Chapter 13 plan;
> d) whether the intervening event or events are expected to continue in the reasonably foreseeable future;
> e) whether the debtor had control, direct or indirect, of the intervening event or events; and
> f) whether the intervening event or events constituted a sufficient and proximate cause for the failure to make the required payments.

*Bandilli*, 231 B.R. at 840. Where courts have understood § 1328(b) to require catastrophic circumstances, purely economic reasons are generally outside the parameters usually amounting to "the type of catastrophic events such as death or disability which prevent a debtor, through no fault of his or her own, from completing payments pursuant to a plan of reorganization." *See Nelson*, 135 B.R. at 307 (noting that the debtor's loss of his truck, inability to find full-time employment, and an unexpected expense of $1,118 are economic reasons and not, therefore, the types of reasons which would justify a hardship discharge); *see also In re Meek*, No. 10–02155–8–JRL, 2012 WL 1194109, at *7 (Bankr. E.D. Va. Feb. 24, 1997) ("[T]he granting of a hardship discharge is reserved for the most extreme and unusual of circumstances that prevent a debtor from completing payments under the plan, and not for purely economic reasons."). On the other hand, where courts have understood § 1328(b)(1) to require less than catastrophic circumstances to justify a debtor's failure to complete payments under a chapter 13 plan, determining the foreseeability and substantiality of the changed circumstances is generally paramount. *See*

*Bandilli*, 231 B.R. at 840; *In re Roberts*, 279 B.R. 396 (B.A.P. 1st Cir. 2000), *aff'd*, 279 F.3d 91 (1st Cir. 2002).

The Court does not have to decide whether to adopt the "catastrophic" circumstances approach or require a lesser level of severity under the circumstances of this case because the evidence before it does not support granting a hardship discharge under either approach. The Court finds that Debtors have failed to meet their burden of proof as to the first element. Although Mr. Martone's health issues are not a circumstance for which he should be held accountable, he voluntarily left his job and chose to return to school rather than find a less physically demanding job in a similar line of business. The volitional underemployment by a debtor who is in good health and capable of finding employment similar or equivalent to his former position, without more, does not satisfy the requirements of § 1328(b)(1). *See Harris*, 2008 Bankr. LEXIS 718, at *3 (holding that debtor was not entitled to a hardship discharge because "temporary loss of employment by a debtor who is in good health and capable of finding new employment, without more, does not satisfy the requirements of § 1328(b)(1)"); *Meek*, 2012 WL 1194109, at *3-4 (holding debtors were not entitled to a hardship discharge after relocating from North Carolina to Colorado for voluntary job change with better job security and pay).

While Mr. Martone was injured in multiple incidents, he is presently capable of employment and actively abstains from employment in retail management—a field in which he has 22 years of experience. As argued in the Motion and confirmed by Mr. Martone's testimony at the Hearing, it was not until the Covid pandemic—after approximately 5 years with Harbor Freight—that Mr. Martone's job evolved from being mainly administrative in duties to a more physical job. There is no indication or evidence, however, that any retail management job post-pandemic would require the same level of physical strain that led to Mr. Martone's leaving the job

7

in the first place. The Court is certainly sympathetic to Mr. Martone's health issues experienced over the past several years, especially given that he is 42 years old. There is no evidence before the Court, however, that his heart attack was directly caused by the job stressors or that any other job that he will pursue after he completes his degree will not create a similar level of stress. While the Court does not call into question Mr. Martone's credibility, given his physical appearance at the Hearing, his testimony that his back issues have improved, his decision to leave his full time job to pursue a different career path with remaining plan payments of less than $5,000.00, and after considering the entirety of the record and the arguments of counsel at the Hearing, the Court concludes that Debtors have presented insufficient evidence to support a finding that Debtors' discontinuation of plan payments was a result of circumstances for which they should not justly be held accountable.

Debtors' current circumstances pose a financial hardship; however, they do not amount to the economic reason which supports a hardship discharge. Accordingly, the circumstances upon which Debtors rely to seek a hardship discharge do not satisfy the first criteria of § 1328(b).

## CONCLUSION

For the foregoing reasons,

**IT IS, THEREFORE, ORDERED** that the Motion for Hardship Discharge is denied.

**AND IT IS SO ORDERED**.
**FILED BY THE COURT**
**06/08/2023**



Elisabetta G. M. Gasparini
US Bankruptcy Judge
District of South Carolina

Entered: 06/08/2023

8